**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FREYTHER DAZA-SALCEDO,<br>Petitioner,<br>v.<br>LEONARD ODDO, et al.,<br>Respondents. | ) | 3:26-CV-1386 |

**MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART PETITIONER FREYTHER DAZA-SALCEDO'S VERIFIED HABEAS CORPUS PETITION AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF (Doc. 1)**

Pending is Petitioner Freyther Daza-Salcedo's Verified Habeas Corpus Petition and Complaint for Injunctive and Declaratory Relief. (Doc. 1).

## I. Background

Petitioner asserts in his habeas petition, and Respondents do not dispute, that Petitioner: (1) is a native and citizen of Colombia; (2) entered the United States on September 29, 2022, was detained and then released on October 2, 2022; (3) was again detained on June 28, 2026, when he attended a scheduled ICE check-in appointment; (4) had removal proceedings pending prior to his June 28, 2026 detention; (5) has not had a final order of removal entered against him; and (6) currently is detained at Moshannon Valley Processing Center. (*Id.* at 1-2, 6, 19-21).

In his habeas petition, Petitioner claims that his detention is properly governed by 8 U.S.C § 1226(a) ("Section 1226(a)") and thus: (1) his detention without notice or a pre-deprivation hearing prior to revoking his release violates the Immigration and Naturalization Act ("INA") (Claim 1); (2) his detention without notice or a pre-deprivation hearing prior to

revoking his release, or procedural due process after his detention violates the Fifth Amendment's Due Process Clause (Claim 2); (3) his termination of parole and the ensuing re-arrest/re-detention violates the parole termination and re-detention regulations of the INA, specifically 8 U.S.C. § 1182(d)(5)(A) and 8 C.F.R. §§ 212.5(e), 236.1(c)(9), and 1236.1(c)(9), and the Fifth Amendment (Claim 3). (*Id.* at 22-26).

By way of relief, Petitioner's habeas petition seeks an Order that includes: (1) declaring Petitioner's re-detention is unlawful; (2) ordering that Petitioner shall not be transferred outside this District while this habeas petition is pending; (3) ordering that Respondents are enjoined from removing Petitioner from the United States without notice and an opportunity to be heard; (4) declaring that Petitioner's detention violates the Fifth Amendment's Due Process Clause; (5) ordering Respondents to release Petitioner immediately; (6) ordering that Respondents are enjoined and restrained from re-detaining Petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community, such that his physical detention is legally justified; and (7) awarding reasonable attorney's fees and costs to Petitioner pursuant to the Equal Access to Justice Act ("EAJA"). (*Id.* at 26-27).

On August 11, 2026, Respondents filed their response in opposition to Petitioner's habeas petition. (Doc. 7). In their response, Respondents argue that "[t]his case is a 'Q.Li' case where the government has detained petitioner under 8 U.S.C. § 1225(b)(2)(A)," and thus, "[t]he Court should deny the petition because: (1) Petitioner is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2)(A) ("Section 1225(b)(2)(A)"); and (2) Petitioner's detention does not violate constitutional due process. (*Id.* at 6).

Respondents also acknowledge that in "Q. Li cases," this Court and many other courts have determined that the detainee's detention is governed by Section 1226(a) and not Section 1225(b)(2)(A). (*Id*. at 8-10). Thus, Respondents request that if this Court decides that Petitioner's detention is governed by Section 1226(a), then it "order an individualized bond hearing before an immigration judge." (*Id*. at 13).

On August 17, 2026, Petitioner filed his reply brief. (Doc. 8). In his reply brief, Petitioner reiterates his arguments that: (1) Section 1226(a) and not Section 1225(b)(2)(A) governs his detention and thus his continued detention violates the INA and the Fifth Amendment's Due Process Clause; and (2) DHS violated its own regulations when it re-detained Petitioner in 2026 without written notice. (*Id.*). Further, Petitioner states: "the Court should grant the Petition and order Petitioner's immediate release. In the alternative, the Court should order Respondents to provide, within seven days, a bond hearing before a neutral Immigration Judge at which the Government bears the burden of proving by clear and convincing evidence that detention is necessary, and should require Respondents to file prompt notice of compliance." (*Id*. at 8).

Accordingly, Petitioner's habeas petition has been fully briefed and is ripe for adjudication.

## II. Discussion and Findings

The issues before the Court are: (1) whether the process pursuant to which Petitioner was re-detained in 2026 violates the INA, its implementing regulations, and/or the Fifth Amendment's Due Process Clause; (2) whether Petitioner's detention is governed by Section 1226(a), as contended by Petitioner, or Section 1225(b)(2)(A), as contended by Respondents;

and (3) what is the relief to which Petitioner is entitled as of today's date, September 3, 2026, for any violations committed by Respondents.

In *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), the United States Court of Appeals for the Third Circuit recently determined, with respect to two petitioners who had entered the United States without inspection and years later were detained by ICE in the interior of the United States by ICE pursuant to 8 U.S.C. § 1225(b) and not provided with a bond hearing, that: (1) "§ 1225(b) governs noncitizens arriving to the United States whereas § 1226 governs those already within our borders; (2) the petitioners' "detentions were unlawful under that provision [Section 1225(b)(2)(A)] of the INA;" and (3) "Petitioner's (sic.) detention without bond hearings violates the Due Process Clause." *Buele Morocho*, 2026 WL 2546223, at *5, 7–8. Accordingly, consistent with the *Buele Morocho* decision, *supra*., under the facts of record in this case, where it is not disputed that Petitioner entered the United States on September 29, 2022, was detained and released on October 3, 2022, and re-detained by ICE approximately four years later, on June 28, 2026, at a scheduled ICE check-in appointment, the Court finds that Petitioner's current detention is governed by Section 1226(a), his detention under Section 1225(b) violates the INA, and Respondents' detention of Petitioner without a bond hearing violates Petitioner's rights under the Fifth Amendment's Due Process Clause.

Accordingly, the Court GRANTS Petitioner's habeas petition and ISSUES the writ on these terms: (1) Respondents shall cause Petitioner to be taken to a neutral immigration judge of the Executive Office of Immigration Review for an individualized bond hearing to occur within 30 days of this Order, or else release Petitioner by such date; (2) Respondents shall ensure that such a hearing includes the required due process, *i.e.*, at a minimum, factfinding based on a

record produced before the decisionmaker and disclosed to Petitioner; an opportunity to make arguments on the Petitioner's behalf; and the right to an individualized determination of Petitioner's interests. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022); and (3) Petitioner shall be responsible for securing the necessary transcripts and record of the bond hearing. The Court trusts the immigration judge to comply with this Order and ensure that Petitioner is provided due process, and therefore, the immigration judge shall explain his or her individualized determination on the record. *See Kamara v. Atty Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005).

Otherwise, Petitioner's habeas petition is DENIED, including to the extent that Petitioner seeks an Order that: (1) enjoins Respondents from transferring Petitioner outside this District while this habeas petition is pending; (2) enjoins Respondents from removing Petitioner from the United States without notice and an opportunity to be heard; (3) requires Respondents to release Petitioner immediately; (4) enjoins and restrains Respondents from re-detaining Petitioner unless the Government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community, such that his physical detention is legally justified; (5) orders a bond hearing before a neutral Immigration Judge at which the Government bears the burden of proving by clear and convincing evidence that detention is necessary and requires Respondents to file prompt notice of compliance therewith; and (6) awards reasonable attorney's fees and costs to Petitioner pursuant to the EAJA.

More specifically, first, to the extent that Petitioner claims that the process by which he was re-detained in 2026 violates the INA, its implementing regulations, and/or the Fifth Amendment, while Respondents did not raise lack of jurisdiction as a reason to deny any of

Petitioner's habeas petition,[1] consistent with this Court's decision in *Pokhrel v. Oddo*, Civ. No. 3:26-1052, 2026 WL 1758206 (W.D. Pa. Jun. 15, 2026) (Schwab, J.) and the decision of the Court of Appeals for the Third Circuit in *Tazu v. Attorney General of the United States*, 975 F.3d 292 (3d Cir 2020), the Court finds that under 8 U.S.C. § 1252(g) ("Section 1252(g)") and 8 U.S.C. § 1252(b)(9) ("Section 1252(b)(9)"), it lacks jurisdiction to adjudicate these claims, which challenge the means by which Petitioner was detained.[2] Accordingly, these claims are denied without prejudice to Petitioner to raise these claims in the proper proceeding.

---

[1] *See Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) (explaining: "[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party'." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *see also id.* (affirming that 'subject matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived') (internal quotation marks omitted.").

[2] In *Pokhrel, supra*., this Court determined, with respect to the petitioner's claim that the respondents violated his Fifth Amendment procedural due process rights when, after detaining and releasing the petitioner subject to an Order of Supervision ("OSUP") in January 2026, DHS re-detained Petitioner in May 2026 without providing him adequate notice and opportunity to be heard prior to re-detaining him, as follows:

> On this issue, the Court finds the case of *Roe v. Oddo*, Civ. No. 3:25-128, 2025 WL 3030692 (W.D. Pa. Oct. 30, 2025), decided by my learned colleague, Stephanie L. Haines, to be both instructive and well-reasoned. In *Roe,* the United States District Court for the Western District of Pennsylvania also considered whether a petitioner's procedural due process challenge – specifically, whether re-detaining that petitioner, who had previously been detained and released subject to an OSUP, without providing him adequate notice and opportunity to be heard – violated his procedural due rights. The District Court in Roe concluded that it did not have jurisdiction to review Petitioner's claims that ICE's decision to revoke his OSUP and re-detain him violated the Fifth Amendment's Due Process Clause, and in doing so, relied upon *Tazu v. Attorney General of the United States*, 975 F.3d 292 (3d Cir 2020), in relevant part, as follows:
>
> > In *Tazu*, the Third Circuit evaluated, among other issues, an alien detainee's "challenge [to] his detention" and his argument "that the Government violated its own regulations and thus due process by detaining him without notice, a revocation interview, and an orderly departure." *Id*. at 295–96. Tazu entered the United States unlawfully in 1993. *Id*. at 294. During removal proceedings in 2001, an Immigration Judge granted Tazu's request to leave voluntarily. *Id.* Tazu appealed to the BIA raising an ineffective assistance of counsel claim, which, in 2003, the BIA denied, giving Tazu thirty days to voluntarily depart. *Id.* When Tazu did not voluntarily leave, "his grant of voluntary departure became an order of removal." *Id*. Tazu was subsequently detained while the Government attempted to remove him to his native country of Bangladesh; however, because "it seemed unlikely that a passport would be issued in the foreseeable future[,]" the Government released Tazu in 2009 on OSUP. *Id*. (cleaned up). Tazu remained on OSUP for the next decade and fully complied with the terms of his supervised release. *Id*. at 295. Yet, in 2019, the Government obtained a passport for Tazu and, three days later, "it re-detained him to execute his removal order." *Id*. at 295, 298. Tazu challenged the Government's decision to revoke his OSUP and re-detain him "without first

giving him notice and a revocation interview[,]" arguing that this "violated the agency's rules and thus due process." *Id*. at 299 (citing 8 C.F.R. § 241.4(l)(1)).

After Tazu's claims wound through the judicial system, he appealed to the Third Circuit which "construe[d] 8 U.S.C. § 1252(b)(9) and (g) to decide whether the District Court had jurisdiction[.]". *Id*. at 295. The Third Circuit explained that Tazu's challenge to the Government's decision to re-detain him in order to execute his removal order did "not challenge the Attorney General's decision to execute his removal order, [but] it d[id] attack the action taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it." *Id*. 298. In reaching this conclusion, the Third Circuit first evaluated the narrower jurisdiction bar, § 1252(g), and found that "[t]he text of § 1252(g) resolve[d] th[at] claim." *Id*. This was the case because, "to perform or complete a removal, the Attorney General must exercise his discretionary power to detain an alien." *Id*. As such, "detention does not fall within some other 'part of the deportation process[,]'" *id.* (quoting *Reno*, 525 U.S. at 482, 119 S.Ct. 936), but falls squarely within the "decision or action by the Attorney General to...execute [a] removal order"—a decision or action that is insulated from judicial review outside of a petition for review. *See* 8 U.S.C. § 1252(g); *Tazu*, 975 F.3d at 298–99. Thus, the Third Circuit explained that, when re-detention is "simply the enforcement mechanism the Attorney General pick[s] to execute [an alien's] removal . . . § 1252(g) funnels review away from the District Court . . . . " *Id.*

In applying the broader § 1252(b)(9) to the situation, the Third Circuit began by noting "that if a claim 'aris[es] from any action taken or proceeding brought to remove an alien,' then review of that claim 'shall be available only in judicial review of a final order.' In other words, § 1252(b)(9) funnels that claim into a petition for review." *Id.* at 299 (quoting 8 U.S.C. § 1252(b)(9)). Because § 1252(b)(9) applies specifically to actions taken or proceedings brought to "remove an alien[,]" the Third Circuit explained that, "'[t]o remove an alien' means to send him back permanently to his home country [or designated country of removal.]" *Id*. (citing *E.O.H.C. v. Secretary United States Department of Homeland Security*, 950 F.3d 177, 184 (3d Cir. 2020)) (internal quotations added) (quoting 8 U.S.C. § 1252(b)(9)). Thus, it follows, that when the Attorney General re-detains an alien so that he may be removed to the country designated in his final order of removal, "the legal questions [an alien] raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus 'aris[e] from') an 'action taken' to remove him[.]" *Id*. Therefore, the Third Circuit found that Tazu's "re-detention challenge is directly about removal[;] . . . [thus,] under § 1252(g) or § 1252(b)(9), the outcome is the same: the District Court lacked jurisdiction to hear it." *Id.*

*Roe*, 2025 WL 3030692, at *13-14 (footnotes omitted).

Turning to the instant case, Petitioner claims that Respondents' failure to provide him with notice or opportunity to be heard prior to arresting and detaining him (and thereby revoking his OSUP) in May of 2026, violates his due process rights. However, as explained in *Roe*, which interpreted *Tazu*, this Court does not have subject matter jurisdiction to hear this claim.

*Pokhrel*, 2026 WL 1758206, at *14–15. *See also Molina Chacon v. Venturella*, Civ. No. 26-6512, 2026 WL 2287933, at *2 (D. N.J. Aug. 10, 2026) (holding: "Petitioner's Fifth Amendment and Administrative Procedure Act claims allege that ICE used his fingerprint appointment as a pretext to apprehend him. Even accepting that allegation as true, those claims challenge the Government's initial decision to detain Petitioner and its execution of the final removal order, rather than the length or conditions of his confinement. 8 U.S.C. § 1252(b)(9) channels claims challenging the basis for removal and the Government's initial decision to detain a noncitizen into the petition-for-review process. *Khalil v. President of the United States*, 164 F.4th 259, 275-81 (3d Cir. 2026). Section 1252(g) separately deprives district courts of jurisdiction over claims arising from the decision or action to execute a removal order, including constitutional and statutory challenges to whether and when the order may be executed. *Tazu v. Att'y Gen*., 975 F.3d 292, 296–300 (3d Cir. 2020). Petitioner may not avoid those jurisdictional limitations

Second, where, as here, Petitioner has been detained for less than three (3) months, the Court finds that providing Petitioner with an individualized bond hearing before an IJ which comports with due process, as the Court has ordered, is the proper remedy for Respondents' statutory and constitutional violations, as opposed to immediate release. *See Foula Bah v. Oddo et al.*, Civ. No. 3:26-1393, 2026 WL 2561261 (W.D. Pa. Aug. 31, 2026) (Horan, J.) (determining: "First, for the reasons stated in the Court's prior decision *Deh v. Warden Moshannon Valley Processing Center, et al.*, No. 3:26-CV-00738-MJH, 2026 WL 1255947 (W.D. Pa. May 7, 2026) and recently by the Third Circuit in *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223 (3d Cir. Aug. 28, 2026), the Court finds that Petitioner is properly detained under § 1226(a), rather than § 1225(b), and is thus owed a bond hearing.") (footnote omitted); *Pico Bano v. Mullen et al.*, Civ. No. 4:26-1449, 2026 WL 1726260, at *5 (M.D. Pa. June 15, 2026) (concluding: "[T]the Court notes that Pico Bano asks only for immediate release from custody as a remedy in this matter—not a bond hearing. However, it is this Court's ordinary practice to order the Government to provide a petitioner with a bond hearing, as 8 U.S.C. § 1226(a) does not entitle an individual to release, but only to such a hearing. Moreover, the Court is of the view that an immigration judge 'is better suited to consider whether Petitioner poses a flight risk and a danger to the community' when evaluating the factors relevant to a bond determination, and immigration judges 'would have greater access to information that could resolve any factual disputes.' Consequently, the Court will not order Pico Bano's immediate release, but will instead direct Respondents to provide him with a bond hearing.") (footnotes omitted); *F.B. v. Oddo*, Civ. No. 3:26-717, 2026 WL 1265352, at *4 (W.D.

by characterizing his challenges to detention and execution of the removal order as due-process or APA claims. *See id*. at 299-300. Therefore, the Court will deny the Petition without prejudice to Petitioner filing a new habeas petition if his detention becomes unreasonably prolonged.").

Pa. May 8, 2026) (Fischer, J.) (holding: "the Court will not order Petitioner's immediate release," and noting "that just as detention without a bond hearing may create a risk of erroneous deprivation of the detainee's liberty interest, immediate release without a bond hearing may create a risk of erroneous deprivation of the Government's security interests.").

Third, the Court lacks jurisdiction to grant Petitioner's request that it enjoin Respondents from transferring him outside the jurisdiction of this Court while this matter is pending. Congress has vested the Secretary of Homeland Security and his/her delegates, such as U.S. Immigration and Customs Enforcement ("ICE") with the authority to detain aliens pending a decision on their removal proceedings. 8 U.S.C. §§ 1231(a)(2), 1226(a), (c)(1). And Congress has vested the Department of Homeland Security ("DHS") with the discretion to set the place of detention. 8 U.S.C. § 1231(g)(1); *Sinclair v. Att'y Gen.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006) (collecting cases). Within DHS' discretion is the authority to transfer aliens from one detention center to another. *Calla-Collado v. Att'y Gen.*, 663 F.3d 680, 685 (3d Cir. 2011). Reading Section 1231(g)(1) together with Congress's limitations in Section 1252(a)(2)(B)(ii) on federal district courts' jurisdiction to review discretionary actions by DHS, federal district courts have concluded that they lack jurisdiction to review DHS' decisions under Section 1231. *See, e.g., Jane v. Rodriguez*, No. 20-5922, 2020 WL 10140953, *1-2 (D.N.J. May 22, 2020) (citing cases). Nor does the All Writs Act, 28 U.S.C. § 1651, provide the Court with jurisdiction to enjoin transfer. *Barrios v. Att'y Gen.*, 452 F. App'x 196, 198 (3d Cir. 2011) (jurisdiction-stripping provision in Section 1252(g) of INA, which is identical to jurisdiction-stripping language of Section 1252(a)(2)(B)(ii), is not superseded by All Writs Act).

Fourth, under Section 1252(g), this Court lacks jurisdiction to enjoin Respondents from removing Petitioner without notice and an opportunity to be heard. *See R.M. v. Oddo*,

Civ. No. 3:26-1117, 2026 WL 2209677, at *3 (W.D. Pa. July 31, 2026) (Hardy, J.) (concluding: "[T]his Court lacks jurisdiction to enjoin her . . . removal," and reasoning: "[U]nder 8 USC 1252(g), no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. Courts, including the Third Circuit, have interpreted the jurisdictional bar broadly to review of issues relating to removability. *See Khalil v. President of the United States*, 164 F.4th 259 (3d. Cir. 2026).").

Fifth, under the facts of this case, where Petitioner has been detained in ICE custody for less than three (3) months, the Court will not order a bond hearing in which the burden of proof shifts to the Government to establish, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community. *See Abai Makeshov. v. Oddo et al.*, Civ. No. 3:26-808, 2026 WL 1579023, at *2 (W.D. Pa. June 3, 2026) (Conti, J.) (explaining: "[Petitioner] argues there was a constitutional defect in the prior bond proceeding because the burden to prove he was not a flight risk was placed upon him, rather than the government having to prove he was a flight risk (ECF No. 1 at 9). That argument, however, is foreclosed by binding precedent.") (citing *Borbot v. Warden Hudson Cnty. Correctional Facility*, 906 F.3d 274, 279 (3d Cir. 2018)); *Modebadze v. Soto*, Civ. No. 26-1687, 2026 WL 1067835, at *1 (D.N.J. Apr. 17, 2026) (Shipp. J.) (reasoning: "As this Court explained in *Aguilar Ramos v. Soto*, No. 25-15315, 2025 WL 3251447, at *1 (D.N.J. Nov. 21, 2025), however, aliens such as Petitioner, although not subject to detention under § 1225(b)(2), are subject to the Government's discretionary detention authority under § 1226(a). Pursuant to that authority, the Government may detain aliens, but aliens must be accorded a bond hearing at which petitioners, and not the Government, bear the burden of demonstrating that they are neither a flight risk nor a danger to the community. *Id.*; *see*

*also Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018). Once a detained alien receives such a hearing and is denied bond, '[n]o court may set aside' the immigration judge's decision as to 'the denial of bond.' 8 U.S.C. § 1226(e). Because the burden of proof under section 1226(a) remains on aliens at all times, *Borbot*, 906 F.3d at 278-79, the immigration judge did not misapply the standard of proof by requiring Petitioner to show that he was not a flight risk at his bond hearing."); *A.D. v. Oddo,* Civ. No. 25-460, 2026 WL 1251470, at *1, n. 3 (W.D. Pa. Feb. 12, 2026) (Haines, J.) (noting: "To be sure, the default in a bond hearing pursuant to 8 U.S.C. § 1226(a) places this burden upon the alien. Nothing in the Order conditionally granting habeas relief shifted the burden to DHS. ECF No. 31. To the contrary that Order, and its accompanying Memorandum Opinion, made clear that the hearing must "include all factors normally available to an immigration court in the context of an immigration bond hearing[,]" and that any additional habeas relief sought by Petitioner was denied. *Id.* at 1. Thus, while the Writ will issue for the reasons set forth herein, Petitioner's argument that the burden should have shifted to DHS explicitly is not among those reasons.") (citing *Borbot,* 906 F.3d at 279).

Finally, as: (1) Respondents filed their response in opposition to Petitioner's habeas petition prior to the Court of Appeals for the Third Circuit's decision in *Buele Morocho, supra.*, being issued, Respondents' position was substantially justified in this case; and (2) this Court lacks jurisdiction to address Petitioner's claims that the process by which he was re-detained in 2026 violates the INA, its implementing regulations, and/or the Fifth Amendment, or to grant a

number of Petitioner's requests for relief, no costs or attorney fees shall be awarded pursuant to the EAJA.

SO ORDERED this 3rd day of September, 2026.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel of Record